UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

HECTOR BIENVENIDO ARIAS,        )
                Petitioner      )    CIVIL ACTION NO. 05-10684-MLW
                                )
        v.                      )
                                )
UNITED STATES OF AMERICA,       )
                Respondent      )
                                )

**Government's Memorandum In Opposition To
Petitioner's Motion To Vacate Sentence
Pursuant To 28 U.S.C. § 2255**

**Introduction**

The United States of America, by Michael J. Sullivan, United
States Attorney, and Michael J. Pelgro, Assistant U.S. Attorney,
hereby files this memorandum in opposition to the petitioner's
motion to vacate his sentence pursuant to 28 U.S.C. § 2255.  As
set forth more fully below, the petitioner's motion should be
dismissed without an evidentiary hearing for three separate
reasons.  First, the petitioner's claim of ineffective assistance
of counsel at sentencing is conclusively refuted by the record in
the criminal case, which establishes that the petitioner
unequivocally stated to the Court at the sentencing hearing that
he was satisfied with his attorney's representation and that he
agreed to the four-level, role-in-the-offense enhancement about
which he now complains.  Second, the petitioner's claim that his
counsel was ineffective for not having resisted the role
enhancement is meritless since the enhancement was supported by
overwhelming evidence and, viewed in context, counsel's decision

not to contest it was a professionally sound strategic decision. Third, the petitioner's claim under United States v. Booker, 125 S.Ct. 738 (2005), is unavailing since his criminal case was final well before Booker was decided and the First Circuit and every other circuit has held that Booker is not retroactively applicable in § 2255 proceedings.

### Facts And Procedural Background[1]

Petitioner Hector Bienvenido Arias, a/k/a "Boogie" ("Arias") and 18 co-defendants were charged in a federal indictment with participating in a conspiracy to distribute heroin from at least in or about January 1999 to in or about February 2001 in Boston and elsewhere. [DE 1 (indictment); DE 120 (superseding indictment)].[2] The conspiracy count, Count One, contained an allegation that the conspiracy involved at least one kilogram of heroin and that 21 U.S.C. § 841(b)(1)(A)(i) (maximum sentence of life imprisonment) was applicable.

The original indictment was returned on February 8, 2001 and

---

[1]The facts and procedural background are taken from the record in the underlying criminal case, Criminal No. 01-10056-MLW.  Thus, [DE] refers to a docket entry while [PSR] refers to the Presentence Report prepared by the Probation Department.  The transcripts of the evidentiary sentencing and other hearings conducted by the Court are referred to by the date of the transcript, followed by the page number.

[2]The co-defendants included Yolanda Herrera, Arias's "common-law" wife and the mother of his four children, and Hector Alexander Arias, a/k/a "Andy," Arias's adult son.  Ms. Herrera has filed a motion to vacate her sentence pursuant to 28 U.S.C. §2255, Civil Action No. 05-10441-MLW.

2

it was unsealed on February 23, 2001 when Arias and others had
been arrested by the Drug Enforcement Administration ("DEA"). [DE
3-4, 90].  Arias was represented throughout the criminal case by
retained counsel, Attorney James McCall ("Attorney McCall"), who
filed his notice of appearance on March 2, 2001. [DE 77].  Arias
was ordered detained throughout the criminal case. [DE 62-63,
121].

    On May 31, 2002, Arias pleaded guilty to Count One pursuant
to a written plea agreement with the government. [DE 234, 265].
In the plea agreement, the parties disagreed as to the amount of
heroin attributable to Arias, his role in the offense conduct,
and the applicability of an obstruction-of-justice enhancement.
The government asserted that Arias was responsible for 1-3
kilograms of heroin, that his Base Offense Level ("BOL") was 32,
that he deserved a four-level role enhancement as an organizer or
leader of criminal activity involving at least five participants,
and that he deserved a two-level, obstruction-of-justice
enhancement for providing false personal information to Pretrial
Services and the Magistrate Judge at the beginning of the case.
Arias asserted that he was responsible only for 100-400 grams of
heroin, that his BOL was 26, that he should not receive any role
enhancement, and that he should not receive any obstruction-of-

justice enhancement. [DE 234].[3]

In the initial Presentence Report dated August 6, 2002, the Probation Department engaged in a comprehensive analysis of the voluminous evidence and determined that Arias was responsible for 3-10 kilograms of heroin and that his BOL was 34. [PSR ¶¶ 426-459].[4]  The Probation Department also concluded that Arias deserved a four-level enhancement due to his role as an organizer or leader of criminal activity involving at least five participants. [PSR §§ 461-464].  The Probation Department also concluded that Arias should receive a two-level, obstruction-of-justice enhancement and that he should not receive any reduction for acceptance of responsibility. [PSR ¶¶ 420-425, 464, 466].  Thus, Probation initially calculated a Total Offense Level ("TOL") of 40, a Criminal History Category ("CHC") of I, and a Guideline Sentencing Range ("GSR") of 292-365 months. [PSR ¶ 520].

Attorney McCall filed six objections, targeting the Probation Department's determinations of drug weight, role in the offense, obstruction of justice, and acceptance of

---

[3]The original plea agreement was filed with the Court.  A copy of the plea agreement was attached to the Presentence Report.

[4]This evidence consisted primarily of multiple controlled purchases of heroin from various workers in the organization (including Hector Alexander Arias), scores of intercepted telephone calls from court-authorized wiretaps, and information received from cooperating witnesses.

responsibility. [PSR Addendum].  As to the first two
calculations, Attorney McCall was unable to persuade the
Probation Department to change its views. [PSR Addendum, Def.
Obj. Nos. 3, 4].[5]  As to the two latter calculations, however,
Attorney McCall did persuade the Probation Department to shift
its position to conclude that Arias should not receive a two-
level enhancement for obstruction of justice and that he should
receive a three-level reduction for acceptance of responsibility.
[PSR Addendum, Def. Obj. Nos. 1, 2; 9/11/02 TR at 66].  Thus, in
the final Presentence Report, dated September 3, 2002, the
Probation Department calculated a BOL of 34, an AOL of 38 (role
enhancement but no obstruction enhancement), a TOL of 35
(acceptance reduction), and a GSR of 168-210 months. [PSR ¶¶ 426-
467, 520].

     The Court scheduled evidentiary sentencing hearings for
Arias and 13 co-defendants beginning on September 10, 2002.
Prior to that date, the government provided Attorney McCall with
notice of the several cooperating witnesses whom it intended to
call at the hearings, including their <u>Giglio</u> information and a
summary of their anticipated testimony.  The government's
position going into the hearings was that it disagreed with

---

[5]In connection with drug weight, Attorney McCall had a fall-
back position, arguing that if Probation did not agree that Arias
was responsible for 100-400 grams of heroin, then it should agree
with the government's estimate of 1-3 kilograms. [PSR Addendum,
Def. Obj. No. 6].

Probation's revised view on obstruction of justice and that Arias should receive the two-level enhancement.

At a status conference on September 7, 2002, the Court discussed with the parties the various sentencing issues and encouraged them to continue discussions with a view toward narrowing and focusing the disputed sentencing issues. The government continued to have discussions with Attorney McCall about the disputed issues affecting Arias's sentencing and ultimately the parties came to an agreement on the disputed issues.

At the beginning of the hearing on September 10, 2002, government counsel and Attorney McCall announced that they had reached the following agreement which they urged the Court to accept: Arias should be held responsible for 1-3 kilograms of heroin (BOL 32); Arias should receive a four-level, role-in-the-offense enhancement (AOL 36); Arias should not receive an obstruction-of-justice enhancement; and Arias should receive a three-level, acceptance-of-responsibility reduction (TOL 33). [9/10/02 TR at 13-14].[6] The Court then engaged in a colloquy directly with Arias, who affirmed that he had read the Presentence Report and discussed it with Attorney McCall, that he

---

[6]During the colloquy, Attorney McCall stated to the Court that he had spent 5-6 hours the day before with Arias. [9/10/02 TR at 16]. Copies of the relevant pages of the transcript of the September 10, 2002 hearing are attached hereto as Exhibit A.

was "fully satisfied" with Attorney McCall's representation, and that he agreed with the positions just enunciated by the government and Attorney McCall. [9/10/02 TR at 14-19]. The Court concluded that the parties' positions on drug weight and the other issues were reasonably based on the evidence and accepted them. [9/10/02 TR at 14-19].[7]

Based on these positions, the Court calculated a TOL of 33, a CHC of I, and a GSR of 135-168 months. [9/10/05 TR at 19-20]. On September 11, 2002, after again reviewing and affirming the parties' agreement on the disputed issues, the Court imposed a sentence of 168 months' imprisonment, 5 years' supervised release, a $100,000 fine, and a $100 special assessment, observing that Arias was the person "primarily responsible" for his son, his "common-law" wife, and everybody else being in federal court facing substantial sentences. [9/11/02 TR at 64-79].[8] The Judgment was docketed on September 24, 2002. [DE 367].

On September 27, 2002, Arias filed a *pro se* notice of appeal. [DE 371].[9] On October 4, 2002, Attorney McCall filed a

---

[7]In connection with the role issue, the Court observed on two occasions that the evidence supporting a four-level enhancement in the Presentence Report was "overwhelming." [9/10/02 TR at 17; 9/11/02 TR at 66].

[8]Copies of the relevant pages of the transcript of the September 11, 2002 hearing are attached hereto as Exhibit B.

[9]A copy of the *pro se* notice of appeal is attached as Exhibit B to Arias's petition.

separate notice of appeal on Arias's behalf. [DE 374].  In April
2003, the Court of Appeals allowed Attorney McCall to withdraw
and appointed Attorney Douglas Beaton to represent Arias.  The
sole issue raised by Arias on appeal was whether he should have
received a role enhancement when, he claimed, the facts indicated
that his son was primarily responsible for running the heroin
organization.  On May 27, 2004, the Court of Appeals summarily
affirmed the Judgment, holding that there was "a very clear
waiver of any claim of error in regard to the imposition of a
four level sentencing enhancement in light of appellant's
leadership role in the conspiracy to which he pled guilty."
[Appeal No. 02-2296 - May 27, 2004 Judgment].[10]

**Argument**

**A.    Attorney McCall Was Not Constitutionally Ineffective At
       Sentencing.**

Arias attempts to reprise his role-in-the-offense argument
on direct appeal by recasting it as an ineffective-of-assistance
claim.  He asserts that Attorney McCall failed to object to
certain evidence contained in the Presentence Report or adduced
at the sentencing hearing, that the evidence demonstrated that
"certain other defendants were primarily responsible for running

---

[10]A copy of the appellate court's decision is attached
hereto as Exhibit C.  The mandate from the Court of Appeals was
docketed on June 23, 2004. [DE 431].  Arias filed his current
petition on April 4, 2005.  The petition was timely filed.  *See*
28 U.S.C. § 2255, ¶ 6(1).

the organization," and that the Court erred in its "appraisal of
the facts of this case." Def. Petition at 5 (Ground One); Def.
Memo at 3-5.[11]

Arias bears the burden of demonstrating, by a preponderance
of evidence, not only that he is entitled to relief under §2255
but also that he is entitled to an evidentiary hearing. Barrett
v. United States, 965 F.2d 1184, 1186 (1st Cir. 1992); United
States v. McGill, 11 F.3d 223, 225 (1st Cir. 1993); Cody v.
United States, 249 F.3d 47, 54 (1st Cir. 2001). An evidentiary
hearing is unnecessary when a §2255 petition "is inadequate on
its face" or, "although facially adequate[,] is conclusively
refuted as to the alleged facts by the files and records of the
case." McGill, 11 F.3d at 226. See also Lema v. United States,
987 F.2d 48, 51 (1st Cir. 1993)(accord); Barrett, 965 F.2d at
1186 (accord). A petitioner is not entitled to relief where his
allegations "cannot be accepted as true because 'they are
contradicted by the record, inherently incredible, or conclusions

_____

[11]Arias also asserts that his "major disagreement" with
Attorney McCall was whether or not a direct appeal should have
been filed and that Arias was "pushed to the point" of filing the
notice of appeal himself. Def. Memo at 2. This claim is
meritless since the record conclusively demonstrates that
Attorney McCall did file a notice of appeal in a timely fashion
and that an appeal went forward on the issue pushed by Arias.
While it is clear that Attorney McCall did not believe Arias had
a viable appeal, see Ex. C to Def. Memo (letter from Attorney
McCall to Arias dated December 20, 2002), he did what any
competent defense attorney would do to preserve his client's
appellate rights. Moreover, there is no claim that Attorney
Beaton was ineffective in pursuing the appeal.

rather than statements of fact,'" <u>Murchu v. United States</u>, 926
F.2d 50, 57 (1st Cir. 1991)(citation omitted); <u>McGill</u>, 11 F.3d at
226 (accord), or where they "amount to mere 'bald' assertions
without sufficiently particular and supportive allegations of
fact," <u>Barrett</u>, 965 F.2d at 1186.

> A district court may dismiss a section 2255
> petition without holding an evidentiary
> hearing if it plainly appears on the face of
> the pleadings that the petitioner is not
> entitled to the requested relief, or if the
> allegations, although adequate on their face,
> consist of no more than conclusory
> prognostications and perfervid rhetoric, or
> if the key factual averments on which the
> petition depends are either inherently
> improbable or contradicted by established
> facts of record.

<u>United States v. LaBonte</u>, 70 F.3d 1396, 1412-13 (1st Cir. 1995).
The trial judge, moreover, "is at liberty to employ the knowledge
gleaned during previous proceedings and make findings based
thereon without convening an additional hearing." <u>McGill</u>, 11
F.3d at 225. *See also* <u>Cohen v. United States</u>, 996 F. Supp. 110,
112 (D. Mass. 1998)(Young, CJ)(a court "may rely on its own
recollections of previous events when deciding a motion brought
under section 2255"); <u>Norton v. United States</u>, 1997 WL 305222 at
*2 (D. Mass. 1997)(Young, CJ) (accord); <u>Indelicato v. United
States</u>, 106 F. Supp. 2d 151, 154 (D. Mass. 2000)(Saris, J)
(accord).

    It is obvious that Arias cannot prevail on this claim. The
record demonstrates that Attorney McCall spent a significant

amount of time going over these issues with Arias before the
hearing, that Arias was satisfied with Attorney McCall's
performance, and that Arias explicitly agreed with the positions
taken by Attorney McCall on September 10, 2002.  This Court
wisely engaged in a direct colloquy with Arias to confirm on the
record that he understood and agreed with Attorney McCall's
statements since the statements differed somewhat from the
positions staked out earlier in the plea agreement and in dealing
with the Probation Department.  Arias unhesitatingly and
unequivocally agreed with Attorney McCall's positions on the
Sentencing Guidelines.  This record convinced the Court of
Appeals that Arias had waived the issue of whether a role
enhancement was warranted.  It now should be viewed as decisive
evidence that Arias is not entitled to vacate his sentence since
it refutes his claim of ineffective assistance.

The essential issue in this proceeding is not whether the
evidence was sufficiently reliable to support the enhancement but
rather whether, in dealing with the issues at sentencing,
Attorney McCall was constitutionally ineffective under the well-
known test enunciated by the Supreme Court in <u>Strickland v.
Washington</u>, 466 U.S. 668 (1984).  In order to prevail, Arias must
establish (1) that "counsel's performance was deficient ... that
counsel made errors so serious that counsel was not functioning
as the 'counsel' guaranteed the defendant by the Sixth Amendment"

and (2) "that the deficient performance prejudiced the defense."
Id. at 687. _See also_ Bucuvalas v. United States, 98 F.3d 652,
658 (1st Cir. 1996)(observing that a defendant's burden of
proving both prongs of the Strickland test is "heavy"). Under
the first prong, Arias must demonstrate that Attorney McCall's
representation "fell below an objective standard of
reasonableness." Id. at 687-88. _See also_ Murchu, 926 F.2d at 58
(accord). Since there is a wide range of professionally
competent representation, since there are an infinite number of
situations in which counsel must make tactical decisions, and
since defendants are often tempted to second-guess counsel's
assistance after an adverse result, judicial scrutiny of
counsel's performance "must be highly deferential" and "a court
must indulge a strong presumption that counsel's conduct falls
within the wide range of reasonable professional assistance; that
is, the defendant must overcome the presumption that, under the
circumstances, the challenged action might be considered sound
trial strategy." Id. at 689. _See also_ Matthews v. Rakiey, 54
F.3d 908, 916 (1st Cir. 1995)(accord). The First Circuit has
emphasized that "[t]he Constitution does not guarantee a
defendant a letter-perfect defense or a successful defense;
rather, the performance standard is that of reasonably effective
assistance under the circumstances then obtaining." United
States v. Natanel, 938 F.2d 302, 309-10 (1st Cir. 1991). The

12

performance standard "is to be applied not in hindsight, but based on what the lawyer knew, or should have known, at the time his tactical choices were made and implemented." <u>Natanel</u>, 938 F.2d at 309.  *See also* <u>Lema</u>, 987 F.2d at 51 (observing that habeas court must evaluate the challenged conduct "from counsel's perspective at the time" and must make every effort "to eliminate the distorting effects of hindsight"); <u>Matthews</u>, 54 F.3d at 917 (that counsel's trial strategy "was not ultimately a winning strategy is of no moment in assessing its reasonableness at the time").

> [T]actical decisions, whether wise or unwise, successful or unsuccessful, cannot ordinarily form the basis of a claim of ineffective assistance....  Only where a defense decision is completely unreasonable, not merely wrong, so that it bears no relationship to a possible defense strategy, is further review into counsel's competence required.

<u>United States v. Ortiz Oliveras</u>, 717 F.2d 1, 3-4 (1st Cir. 1983). *See also* <u>Barrett</u>, 965 F.2d at 1193 (habeas petitioner must demonstrate that counsel's error "clearly resulted from neglect or ignorance rather than from informed, professional judgment" and "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable").

It is clear that Attorney McCall made a professionally sound tactical decision to reach an agreement rather than to litigate issues that he was unlikely to win.  Attorney McCall's strategy

was appropriate and clearly benefitted Arias in at least four ways. First, Attorney McCall convinced the Probation Department to reverse itself on the obstruction-of-justice and acceptance-of-responsibility issues. Second, he convinced the government and the Court to accept the estimated drug weight of 1-3 kilograms, rather than to adopt Probation's figure of 3-10 kilograms, thereby causing the BOL to go from 34 down to 32. Third, he convinced the government not to litigate its previously-stated position on obstruction of justice. Fourth, and perhaps most important, Attorney McCall's decision to concede the role issue was sound tactically since, as the Court observed, the evidence against Arias on this point was overwhelming.[12]

---

[12]The wiretap evidence revealed that Arias ran the organization by giving directions to his son, Hector Alexander Arias (the day-to-day manager) and to his "common-law" wife, Yolanda Herrera (the bookkeeper). Arias proclaimed himself to be the boss and said that things had to be done his way. [PSR ¶¶ 200, 461]. He gave orders [PSR ¶¶ 203, 244], controlled the receipt and processing of the heroin [PSR ¶¶ 4, 201-202], coordinated deliveries and fielded complaints about his unreliable distributors [PSR ¶¶ 30, 44, 63, 97-98, 115-118, 383, 461], bailed out his distributors when they were arrested [PSR ¶¶ 41, 226], and paid wages to Hector Alexander Arias and Yolanda Herrera [PSR ¶ 203]. His distributors said they worked for him and identified him as the owner of the business. [PSR ¶¶ 119, 125-126, 128, 199, 181, 203]. This Court had a sturdy foundation on which to base a four-level role enhancement. *See, e.g.,* United States v. Berrios, 132 F.3d 834, 839 (1st Cir. 1998); United States v. Andujar, 49 F.3d 16, 25 (1st Cir. 1995). Even if Arias's adult son assumed a managerial or supervisory role, the enhancement for Arias was warranted since there can be more than one leader in a conspiracy. *See, e.g.,* United States v. Casas, 356 F.3d 104, 129 (1st Cir. 2004); Andujar, 49 F.3d at 25; U.S.S.G. § 3B1.1, comment. (n.4).

14

As a result of Attorney McCall's representation as a whole, the GSR as determined by the Court was 135-168 months, less than half of the one originally calculated by the Probation Department.  His tactical decision to concede the role issue, which was but one facet of an overall strategy that clearly benefitted Arias on the drug-weight, obstruction-of-justice, and acceptance-of-responsibility issues and resulted in a significant reduction of the GSR, was professionally sound and was based on a realistic assessment of the strengths and weaknesses of his client's position.  Unfortunately for Arias, he was at the top of this heroin distribution conspiracy and the wiretap and other evidence of his leadership role was compelling.  Had Attorney McCall decided to litigate the sentencing issues, there was a very real risk that Arias would have been facing a much higher GSR.[13]  Accordingly, Arias's claim that Attorney McCall was constitutionally ineffective at sentencing is without merit.

**B.    Arias's Claim That The Court's Fact Findings Violated The Sixth Amendment Is Not Cognizable Since Booker Is Not Retroactive.**

In his petition, Arias claims that this Court's factual findings in arriving at the GSR violated the Sixth Amendment

---

[13]Arias complains that Attorney McCall failed to object to testimony provided at the sentencing hearing by cooperating co-defendants.  Once an agreement was reached, however, Attorney McCall was not expected to play a role in the questioning of witnesses or the presentation of evidence at the hearings.  Indeed, the government shifted its focus away from Arias and onto the other defendants who were contesting various issues.

because, "[i]n light of recent Supreme Court rulings, and in
light of the United States Constitution, any facts that increase
the penalty must be proven by jury findings, not [by] judicial
fact finding." Def. Petition at 5 (Ground Two). Since Arias
failed to develop this argument, or to cite any cases in support
of it, it must be deemed waived. *See* United States v. Bongiorno,
106 F.3d 1027, 1034 (1st Cir. 1997); Pratt v. United States, 129
F.3d 54, 62 (1st Cir. 1997). Moreover, this argument has no
merit since Arias expressly agreed to drug weight and role in the
offense during his colloquy with the Court on September 10, 2002.
Finally, the law is clear that the Supreme Court's decision in
Booker has not been made retroactively applicable to cases on
collateral review.

   Arias claims, in effect, that Booker gives him a right to be
resentenced to a lower sentence because the jury was not asked to
determine drug weight or role in the offense. The First Circuit
has ruled that claims such as this are not cognizable in a § 2255
proceeding, i.e., that Booker is not applicable retroactively to
cases that were final prior to the issuance of the Booker
decision on January 12, 2005.[14] Cirilo-Munoz v. United States,

───────────────

   [14]As set forth above, the Court of Appeals ruled against
Arias on May 27, 2004 and the mandate was docketed in the clerk's
office on June 23, 2004. Even using the latter date as the start
of the 90-day period within which Arias could have filed a
petition with the Supreme Court for a writ of certiorari, it is
clear that Arias's criminal case became final by late September
2004.

404 F.3d 527, 532-33 (1st Cir. 2005).[15]  Every other circuit court
of appeals has ruled in the same fashion.  *E.g.,* <u>United States v.
Morris</u>, __ F.3d __, 2005 WL 2950732 (4th Cir. Nov. 7, 2005);
<u>Never Misses A Shot v. United States</u>, 413 F.3d 781, 783-84 (8th
Cir. 2005) (per curiam)(collecting cases); <u>Guzman v. United
States</u>, 404 F.3d 139, 141-44 (2nd Cir. 2005).

    In <u>Booker</u>, the Court explicitly made its holding applicable
to all cases pending on direct review, 125 S.Ct. at 769, but made
no explicit statement of retroactivity to collateral cases.  As
the First Circuit has observed, "[o]nly in limited circumstances
do new rules apply to convictions that have already become
final." <u>Cirilo-Munoz</u>, 404 F.3d at 532.  Under the analysis
enunciated by the Supreme Court in <u>Teague v. Lane</u>, 489 U.S. 288,
109 S.Ct. 1060 (1989)(plurality opinion), a new rule of
constitutional law does not apply retroactively to cases on
collateral review unless the rule is substantive or a "watershed"
rule of procedure "implicating the fundamental fairness and
accuracy of the criminal proceeding." <u>Schriro v. Summerlin</u>, 124
S.Ct. 2519, 2522-23 (2004).  As the First Circuit and other
courts have ruled, <u>Booker</u> did not establish a substantive rule.
<u>Cirilo-Munoz</u>, 404 F.3d at 532; <u>Guzman</u>, 404 F.3d at 142.  Nor did
it establish a watershed rule of procedure since the only change

---

[15]*See also* <u>Sepulveda v. United States</u>, 330 F.3d 55, 61-63
(1st Cir. 2003)(holding that the Supreme Court's decision in
*Apprendi* would not apply retroactively).

was the degree of flexibility that judges have in applying the guidelines and since judge-made findings at sentencing do not undermine "accuracy" or "fundamental fairness" at sentencing. <u>Cirilo-Munoz</u>, 404 F.3d at 532-33; <u>Guzman</u>, 404 F.3d at142-43. *See also* <u>McReynolds v. United States</u>, 397 F.3d 479, 481 (7th Cir. 2005). Accordingly, Arias's claim is not cognizable in a § 2255 petition.

## Conclusion

Based on the foregoing reasons, the government respectfully requests that the Court dismiss the § 2255 petition in this case without conducting an evidentiary hearing.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By: /s/Michael J. Pelgro
Michael J. Pelgro
Assistant U.S. Attorney


DATED:    December 5, 2005.

18

## CERTIFICATE OF SERVICE

This is to certify that I have this day served upon the person listed below a copy of the foregoing document by depositing in the United States mail a copy of same in an envelope bearing sufficient postage for delivery:

    Hector Bienvenido Arias
    Inmate No. 23566-038
    FCI Elkton
    P.O. Box 10
    Lisbon, OH 44432

This 5th day of December 2005.

                        /s/Michael J. Pelgro
                        MICHAEL J. PELGRO
                        ASSISTANT UNITED STATES ATTORNEY

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS


UNITED STATES OF AMERICA        )  CR 01-10056
                                )  Boston, MA
v.                            )  September 10, 2002
                                )
NELSON RUDY TEJEDA, ET AL        )


BEFORE THE HONORABLE MARK L. WOLF
UNITED STATES DISTRICT JUDGE


APPEARANCES:


(As previously noted.)


JUDITH A. TWOMEY, RPR
Official Court Reporter
One Courthouse Way
Courtroom 10~Room 5200
Boston, MA 02210
(617)946-2577



EXHIBIT
A
Arias

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS


UNITED STATES OF AMERICA        )   CR 01-10056
                                     )   Boston, MA
v.                              )   September 11, 2002
                                   )
NELSON RUDY TEJEDA, ET AL      )


BEFORE THE HONORABLE MARK L. WOLF
UNITED STATES DISTRICT JUDGE


APPEARANCES:

(As previously noted.)


JUDITH A. TWOMEY, RPR
Official Court Reporter
One Courthouse Way
Courtroom 10~Room 5200
Boston, MA 02210
(617)946-2577



EXHIBIT
B
Arias

*USDC, MA.*
*Wolf, J.*

# MANDATE

# United States Court of Appeals
## For the First Circuit

---

No. 02-2296

UNITED STATES,

Appellee,

v.

HECTOR BIENVENIDO-ARIAS,

Defendant, Appellant.

---

Before

Boudin, <u>Chief Judge</u>,
Lipez and Howard, <u>Circuit Judges</u>.

---

JUDGMENT
Entered:  May 27, 2004

There was a very clear waiver of any claim of error in regard to the imposition of a four level sentencing enhancement in light of appellant's leadership role in the conspiracy to which he pled guilty. <u>See</u> U.S.S.G. § 3B1.1(a).

The government's motion for summary affirmance is <u>granted</u>. 1st Cir. R. 27(c).

**Certified and Issued as Mandate under Fed. R. App. P. 41.**

Richard Cushing Donovan, Clerk

Deputy Clerk

Date: 6/17/04

By the Court:

Richard Cushing Donovan, Clerk.

By: **JULIE GREGG**
Appeals Attorney.

[cc: Douglas Beaton, Esq., Michael Pelgro, AUSA, Peter Levitt, AUSA, Dina Chaitowitz, AUSA, Virginia Vander Jagt, AUSA]

EXHIBIT
C
Arias