UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

HECTOR BIENVENIDO ARIAS,        )
        Petitioner        )        CIVIL ACTION NO. 05-10684-MLW
                     )
       v.        )
                     )
UNITED STATES OF AMERICA,       )
        Respondent        )
                     )

**Government's Motion To Substitute
Exhibits In Support Of Its Memorandum**

The United States of America, by Michael J. Sullivan, United States Attorney, and Michael J. Pelgro, Assistant U.S. Attorney, hereby files this motion to substitute exhibits in support of its memorandum in opposition to the petitioner's motion under 28 U.S.C. § 2255.  The government requests that the Court consider the three exhibits attached to this motion instead of the three exhibits attached to the government's memorandum.

In support of this motion, the government states that, on December 5, 2005, it filed its memorandum in opposition to the petitioner's motion under 28 U.S.C. § 2255.  The government attached to the memorandum three exhibits from the underlying criminal case.  Certain exhibits, however, did not scan properly so that only the first page of the proposed exhibit was filed. The government has re-scanned the exhibits in their entirety.

The government therefore respectfully requests that the Court allow this motion to substitute the three exhibits attached to this motion instead of the three exhibits attached to the previously-filed memorandum.

                              Respectfully submitted,

                              MICHAEL J. SULLIVAN
                              United States Attorney

                    By:    /s/Michael J. Pelgro
                           Michael J. Pelgro
                           Assistant U.S. Attorney


DATED:     December 7, 2005.



                    CERTIFICATE OF SERVICE

     This is to certify that I have this day served upon the
person listed below a copy of the foregoing document by
depositing in the United States mail a copy of same in an
envelope bearing sufficient postage for delivery:

               Hector Bienvenido Arias
               Inmate No. 23566-038
               FCI Elkton
               P.O. Box 10
               Lisbon, OH 44432

     This 7th day of December 2005.


                     /s/Michael J. Pelgro
                    MICHAEL J. PELGRO
                    ASSISTANT UNITED STATES ATTORNEY
                              2

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS


UNITED STATES OF AMERICA     )  CR 01-10056
                             )  Boston, MA

v.                       )  September 10, 2002
                             )

NELSON RUDY TEJEDA, ET AL     )


BEFORE THE HONORABLE MARK L. WOLF
UNITED STATES DISTRICT JUDGE


APPEARANCES:


(As previously noted.)


JUDITH A. TWOMEY, RPR
Official Court Reporter
One Courthouse Way
Courtroom 10~Room 5200
Boston, MA 02210
(617)946-2577



2

INDEX

| WITNESS | DIRECT | CROSS | RD | RC | COURT |
|---------|--------|-------|----|----|-------|
| Joevanni Figueroa | 94 | 107 | | | |
| Linna Gonzalez | 116 | 132 | | | |
| Raphael Feliz Guevara | 134 | 139 | | | 139 |
| Awilda Osorio | 140 | | | | |

| EXHIBITS | MARKED | RECEIVED |
|----------|--------|----------|
| 1 | | 113 |
| 2 | | 132 |
| 3 | | 138 |

13

1              THE DEFENDANT:  Yes, with the help of my

2       attorney.

3              THE COURT:  Okay.  And then when we were here

4       last week, I discussed with counsel whether they could

5       talk further to narrow any of the disputes with regard

6       to weight, for example.  There were some instances where

7       the Probation Department had a higher weight than the

8       government was advocating.  But it appeared there might

9       be an area in which reasonable people could reasonably

10      differ, based on the evidence, and there were some

11      instances where, although I may not have verbalized

12      this, it appeared that some of the defendants were

13      taking positions with regard to weight, particularly

14      defendants high up in the conspiracy that there's very

15      strong evidence to indicate would be proven to be too

16      low.

17             But has there been any evolution in the

18      parties' positions?

19             MR. PELGRO:  Yes, your Honor.  And, if you

20      want, I can go through them defendant by defendant.

21             THE COURT:  Sure.

22             MR. PELGRO:  With regard to Hector B. Arias, my

23      understanding is that the defendant is now not disputing

24      the government's drug quantity figure of one to three

25      kilograms of heroin, which is base offense level 32.  So

1    -- and that's the position the government took in the

2    plea agreement.  So that the government continues to

3    believe that's a reasonable estimate of this mass of

4    evidence.

5              THE COURT:  Okay.  Mr. McCall, is that correct?

6              MR. McCALL:  That's correct, your Honor.

7              MR. PELGRO:  Your Honor, the defendant is also

8    agreeing to the four level role adjustment, which

9    Probation has also indicated is appropriate.  The

10   government is dropping its objection concerning

11   obstruction of justice, which Probation had declined to

12   give.  And that brings into play the acceptance issue

13   and, obviously, the parties are agreeing to the

14   acceptance reduction.

15             So, essentially, your Honor, we have no further

16   disputed factual issues with regard to Hector B. Arias.

17             THE COURT:  Mr. McCall, is that correct?

18             MR. McCALL:  That's correct, your Honor.

19             THE COURT:  In a few moments, I'm going to go

20   over -- actually, it may make sense to do this right

21   now.

22             Can I see the file for Hector B. Arias.

23             (Short pause.)

24             THE COURT:  Would Hector B. Arias please stand.

25             Mr. McCall, have you and Hector B. Arias each

15

1    read -- have you read the presentence report?

2         MR. McCALL:  Yes, your Honor.

3         THE COURT:  Including the addenda with the

4    objections?

5         MR. McCALL:  Yes, your Honor.

6         THE COURT:  Mr. Arias, was the presentence

7    report and the objections in the back of it read to you

8    in Spanish?

9         THE DEFENDANT:  Yes.

10        THE COURT:  And, Mr. McCall, other than the

11   objections in the back of the report, did you or Mr.

12   Arias see anything in the report that you thought was

13   inaccurate that might make a difference to sentencing?

14        MR. McCALL:  No, your Honor.

15        THE COURT:  Mr. Arias, did you see anything in

16   the report other than what your attorney originally

17   objected to that looked like it was inaccurate and might

18   make a difference to sentencing?

19        THE DEFENDANT:  In my opinion, there are some

20   parts that are not good.

21        THE COURT:  Mr. McCall, in your opinion, there

22   are some parts that are not correct.

23        Mr. Arias, have you discussed with your

24   attorney what parts are not correct and told him what

25   parts you think are not correct?

1          THE DEFENDANT:  Yes.

2          THE COURT:  Let's see on some of this.

3          Mr. Arias or Mr. McCall, I was just told that

4    Mr. Arias now agrees that under the Guidelines he should

5    be held responsible for one to three kilograms of heroin

6    rather than one to 400 grams, which was the basis of

7    your objection, or the 3,146 grams found by the

8    Probation office.  Is that indeed Hector B. Arias'

9    present position?

10          MR. McCALL:  It was yesterday, after about five

11   or six hours with an interpreter in the Marshal's

12   lockup, we left, and that was his position taken by

13   himself, his wife, and son.

14          THE COURT:  Mr. Arias, are you as you stand

15   here today in agreement, after speaking with your

16   attorney, that you should be held responsible for one to

17   three kilograms of drugs?

18          THE DEFENDANT:  Yes.

19          THE COURT:  And are you fully satisfied with

20   Mr. McCall's work as your lawyer in this case?

21          THE DEFENDANT:  Yes.

22          THE COURT:  Well, I'm going to accept that

23   resolution of this dispute.  The Probation Department

24   recommended 3,146 grams, which I believe would expose

25   Mr. Arias to a higher sentence than the one to three

1    kilograms.  Having studied the presentence report, I

2    find that there was very substantial evidence to

3    establish the one to three kilograms, and the only

4    serious question I can perceive, if this matter were

5    litigated, is whether he would be held responsible for a

6    higher amount and, therefore, have to serve a higher

7    sentence.  So I certainly think there's a proper factual

8    basis for this agreement.  On the other hand, we're only

9    talking about the difference of less than 150 grams.

10    There are some debatable issues that exist, and I think

11    that since, in situations like this, reasonable

12    approximations are not only permissible but required,

13    that the agreement the parties reached is reasonable

14    and, therefore, I will accept it.

15          Accordingly, the base offense level is 32.

16          Then, there was an issue as to whether -- as

17    Probation and the government agree -- there should be a

18    four level enhancement for role in the offense.  The

19    evidence of that in the presentence report seemed

20    overwhelming.

21          Mr. McCall, you tell me that Mr. Arias now

22    agrees to accept that and withdraws his --

23          MR. McCALL:  I think, as your Honor said, he

24    realizes that the evidence is overwhelming, and I don't

25    have much to say about it.

1              THE COURT:  But that is an objection you've

2       withdrawn?

3              MR. McCALL:  Yes, your Honor.

4              THE COURT:  Hector B. Arias, please stand

5       again.

6              Do you agree that under the Sentencing

7       Guidelines it is proper to give you a four level upward

8       adjustment for your role as an organizer or leader of a

9       group which consisted of more than five defendants?

10             THE DEFENDANT:  Yes, that's fine.

11             THE COURT:  And I will, as I said, or

12      indicated, accept that, because there is overwhelming

13      evidence to establish that.

14             As I understand it, the government has

15      withdrawn its objection with regard to obstruction,

16      which also strikes me as -- although my role in

17      assessing the government's judgments are different --

18      but as reasonable in the circumstances.

19             MR. PELGRO:  Yes, your Honor.  Related to

20      family relationships, essentially.

21             THE COURT:  Including not acknowledging that

22      Hector A. Arias, who is in the courtroom, or mentioning

23      that he was his son.

24             MR. PELGRO:  Right.

25             THE COURT:  That one, the government would have

1    had some difficulty proving, and it is proper to get the

2    three level reduction for acceptance of responsibility.

3         So, if I've done the arithmetic right, I think

4    that leaves us at a level 33.

5         MR. McCALL:  Yes, your Honor.

6         THE COURT:  So with regard to this defendant,

7    the total offense level is 33.  The criminal history

8    category is 1.  To the best of my knowledge, nothing

9    changes with regard to the other categories.  33-1, the

10   Guidelines are 135 to 168 months.  There's 36 months

11   supervised release, a fine range of 25,000 to a million

12   dollars, and a $100 special assessment.

13        MR. PELGRO:  Judge, on the issue of supervised

14   release, the government, as you may or may not be aware,

15   has sort of an ongoing issue about that with Probation.

16   The government alleged over a kilo of heroin.  The

17   defendant is agreeing to over a kilo of heroin.  If you

18   look in 841B1A, it says the period of supervised release

19   shall be not less than five years.  The government feels

20   that that's the period of supervised release that is

21   applicable here.  I believe, based on Apprendi,

22   Probation takes a different tap on that.  I think in

23   this situation where the defendant is agreeing to that

24   quantity and it's alleged in the indictment  --

25        THE COURT:  What is it that raises it to 60

20

1    months?

2            MR. PELGRO:  B1A, your Honor.  Title 21,

3    section 841B1A says, if the quantity is 1,000 or more

4    grams of heroin, the period of supervised release shall

5    be not -- shall be at least five years.

6            THE COURT:  Well, I guess I'll reserve judgment

7    on that until I impose sentence.

8            Other than that, does the government agree that

9    the Guideline ranges are as I've calculated them?

10            MR. PELGRO:  Yes, your Honor.

11            THE COURT:  Mr. McCall, do you agree?

12            MR. McCALL:  I agree.

13            FROM THE FLOOR:  I believe fine is 17,500 on a

14    level three.

15            THE COURT:  17,500, okay, with that amendment.

16            Mr. Arias, you may be seated.

17            Let's go -- why don't I go defendant by

18    defendant.  I think -- actually, who's the next person

19    you reached an agreement with?

20            MR. PELGRO:  Partial agreement with Hector A.

21    Arias.

22            THE COURT:  All right.

23            MR. PELGRO:  Your Honor, with regard to Hector

24    A. Arias, my understanding is that the defendant is

25    agreeing with the government's position concerning the

1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS


UNITED STATES OF AMERICA          )  CR 01-10056
                                  )  Boston, MA
v.                                )  September 11, 2002
                                  )
NELSON RUDY TEJEDA, ET AL         )



BEFORE THE HONORABLE MARK L. WOLF
UNITED STATES DISTRICT JUDGE



APPEARANCES:


(As previously noted.)




JUDITH A. TWOMEY, RPR
Official Court Reporter
One Courthouse Way
Courtroom 10~Room 5200
Boston, MA 02210
(617)946-2577



2

INDEX

| WITNESS | DIRECT | CROSS | RD | RC | COURT |
|---------|--------|-------|----|----|-------|
| Jose Cruz | 58 | | | | |


| EXHIBITS | MARKED | RECEIVED |
|----------|--------|----------|
| 13 | | 30 |
| 14 | | 33 |

64

1    going to do each defendant one by one.  I'm going to

2    start with Hector B. Arias, go to Hector A. Arias,

3    Yolanda Herrera.

4         We'll take a break now for about ten minutes,

5    and I will begin sentencing the defendants.

6         Court will be in recess.

7         (Short break.)

8         THE CLERK:  Court is back in session.  You may

9    be seated.

10         THE COURT:  You may be seated.

11         As we have discussed, we'll start with Hector

12    B. Arias.  He's already told me that he has read the

13    presentence report.  We've identified the issues that

14    might make a difference to sentencing.  I believe that

15    except with regard to supervised release there are no

16    open issues.  The parties and the court have agreed that

17    the amount attributable to the defendant is one to three

18    kilograms.  He was a leader and organizer of a

19    conspiracy that involved more than five people.  There

20    is no obstruction of justice by him.  There is at most

21    or worst innocent errors.  Acceptance of responsibility

22    is appropriate.

23         I'm going to leave open for just a second the

24    issue of supervised release.  But, Mr. McCall, have I

25    recited that all properly?

1          MR. McCALL:  Yes, your Honor.  Just one thing I

2     would mention to the court.  Perhaps I overlooked it.

3     In the presentence report, on financial condition,

4     ability to pay, it's my memory and I did check it with

5     Pretrial Services.  There was a lengthy interview, and

6     they were taking Mr. Arias back to Plymouth.  I believe

7     our collective memory is that we did touch on what if

8     any assets he had available and that there weren't any.

9          THE COURT:  Actually, we'll discuss that.

10    Maybe I will stop.

11         Let's go to the addendum to the presentence

12    report.  It begins at page 124.  The first objection

13    generated -- by the government -- generated a

14    correction.

15         The second objection generated an amendment.

16         The third objection went to weight.  So that

17    objection should be allowed and is allowed.

18         The fourth objection relates to the weight and

19    is allowed.

20         The fifth objection is the same.

21         The sixth objection generated an amendment.

22         The seventh objection relates to the earlier

23    objections concerning Guideline calculations.

24         Objection 8 seems to require no ruling.  Is

25    that correct?

66

1           MR. PELGRO:  That's correct, your Honor.

2           THE COURT:  Do you agree, Mr. McCall?

3           MR. McCALL:  I do, your Honor.

4           THE COURT:  The defendant's objection, the

5     first one, goes to obstruction of justice and, by

6     agreement, that is allowed.  The obstruction enhancement

7     has been removed.

8           The second objection related to acceptance of

9     responsibility, and that's allowed.  He is getting

10    credit or acceptance of responsibility.

11          The third objection related to weight, and it's

12    allowed in part.  I'm not holding him accountable for

13    3,605 grams, but he is being held for one to three

14    kilograms.

15          The fourth objection has been withdrawn.  That

16    was the objection to a four level increase as an

17    organizer or leader.  And even if it hadn't been

18    withdrawn, the evidence is overwhelming that that four

19    level upward adjustment is appropriate.

20          The fifth objection, again, relates to amount.

21          And I think that's all the objections.  Is that

22    correct?

23          MR. PELGRO:  Yes, your Honor.

24          MR. McCALL:  Yes, your Honor.

25          THE COURT:  Therefore, I'm putting aside the

1    issue of supervised release.  The total offense level,

2    as I calculate -- but none of this is rhetorical --

3    counsel and the Probation Department should correct me

4    if you think there's an error -- total offense level is

5    33.  The criminal history category is 1.  Guidelines are

6    135 to 168 months in prison.  Fine range of 17,500 to $1

7    million.  And a $100 special assessment.

8              Do the parties agree with that as far as it

9    goes?

10             MR. PELGRO:  Yes, your Honor.

11             MR. McCALL:  Yes, your Honor.

12             THE COURT:  I hear no (sic) from Probation.  If

13   you want, I'll give the parties an opportunity to be

14   heard on this but I, at the moment, think the government

15   is right and that 60 months supervised release is

16   proscribed by the statute and not inapplicable because

17   of the Supreme Court decision in Apprendi.

18             First of all, it's not clear that the five

19   years raises or represents a raise in the maximum

20   statutory penalty.  There's cases, I think, like US

21   versus Quiodel (sic), 229 F 3rd 926, that suggest that

22   supervised release of up to ten years or more can be

23   imposed under this drug statute.  There's no expressed

24   maximum and, therefore, five years would be within the

25   statutory cap.

68

1          More significantly, in this case, or to me, the

2     defendant pled guilty and waived his right to have the

3     jury decide the amount and, therefore, it would be

4     permissible for the court, if necessary, to decide it,

5     and to have the amount of supervised release flow from

6     that decision.

7          In addition, with regard to this defendant, at

8     least, there has been no dispute regarding the amount.

9     The parties agree that it's one to three kilograms.  As

10    things evolved, I've basically accepted that resolution

11    as reasonable.  So I haven't even decided the amount.

12    If it had been litigated, it's possible I would have

13    decided it was more than the three kilograms as

14    Probation recommended, although for reasons I said the

15    other day, approximations are required in matters like

16    this, and this was a reasonable arm's length resolution

17    of the issue.

18          So, for all of those reasons, it's my present

19    intention, except possibly hearing from Mr. McCall, to

20    impose 60 months of supervised release.  It may be

21    academic, because when Mr. Arias gets out of prison,

22    he's likely to be deported.  But do you want to be heard

23    on this issue?

24          MR. McCALL:  No, your Honor.

25          THE COURT:  So the Guideline range for Mr.

1    Arias and for others as to whom that analysis applies,

2    in my view, is 60 months.

3            What then is the government's recommendation

4    with regard to Hector B. Boogie Arias and what are the

5    reasons for it?

6            MR. PELGRO:  Your Honor, the government is

7    recommending a period of incarceration of 168 months, to

8    be followed by a term of supervised release of five

9    years.  The government is not advocating a fine in this

10   case because the government doesn't feel the defendant

11   has the ability to pay a fine, and the $100 special

12   assessment.

13           Your Honor, as you can tell from the voluminous

14   presentence report and some of the evidence we've heard,

15   the defendant and his son are the two persons most

16   responsible for the distribution of up to three

17   kilograms of heroin on the streets over that two plus

18   year period of time that we can prove this conspiracy

19   was in existence.

20           The defendant, as you know from the PSR,

21   illegally entered the United States in 1991.  He jumped

22   bail on INS deportation proceedings.  He relocated to

23   Boston.  Despite living with his common law wife with

24   whom he's had a relationship for a number of years, he

25   entered into this marriage, civil marriage ceremony,

1    which the government contends was a sham, and then he

2    used that to try to persuade INS to change his status

3    from illegal to legal.

4        He's used a false identity, Ramos Pogaro (sic),

5    for medical benefits and different types of things.

6    He's used a false Social Security number in order to

7    work.  But, more importantly, he's the person who sat in

8    7 Daria Court and pulled the strings by which all of

9    this conspiracy was obtained from multiple suppliers,

10    processed and bagged and prepared for distribution by

11    his son, by his common law wife, sometimes by his son's

12    girlfriend, Linna Gonzalez, in that apartment, stored in

13    the apartment, and then sent out through a whole network

14    of couriers to various retail distributors on the

15    street.  That when the DEA began its investigation in

16    January of 1999, that conspiracy was in full bloom.

17    That was going.  It was still going when the defendants

18    were arrested on February 23, 2001, over two years

19    later.

20        The defendant, as you can see from the

21    presentence report, was not making the deliveries except

22    for a couple here and there.  The defendant was really

23    not the person keeping track of the financial records.

24    He delegated that responsibility to his common law wife,

25    Ms. Herrera.  He was not the person who was reaching

1   out, for the most part, and contacting the suppliers and

2   organizing the acquisition of inventory.  He delegated

3   that responsibility to his son.  He was not the person

4   who was actually sitting there and putting the cut into

5   the heroin and making the packets.  He had delegated

6   that responsibility to his family members.

7         As you can see from all of the presentence

8   reports in this case, he exercised tight control and

9   discipline over Ms. Herrera and, to a certain extent,

10  over his son Arias, although they had disagreements

11  along the way.

12        The defendant is the classic insulated leader

13  who does not take the risk and go out on the street and

14  make the deals but reaps the benefits.  He reaped the

15  profits from all this, and he's the person the

16  Guidelines say has the most relative responsibility, and

17  he should get the highest sentence in this case.

18        THE COURT:  Thank you.  Mr. McCall.

19        MR. McCALL:  Thank you, your Honor.

20        Your Honor, my client is 50 years old, and he

21  has no prior record.  His offense conduct and the role

22  in the offense are reflected in the Guidelines.  He has

23  accepted responsibility.  It was his decision, your

24  Honor, not to pursue what may well have been a less than

25  compelling, if not frivolous argument on the lesser

72

1    amount.  That was his decision.  It's by way of saying,

2    your Honor, since his arrest, he's done everything that

3    he can do to own up and accept responsibility.

4         He's in very poor health.  He suffered a heart

5    attack in 1999.  He was hospitalized for an extended

6    period of time.  He has high blood pressure.  He's

7    diabetic.  I can state from personal knowledge that I

8    have been down to Plymouth on several occasions that

9    I've been down to see him.  On several of those

10   occasions, he's actually been in the infirmary being

11   treated by physicians.  It's been an extremely difficult

12   pretrial detention for him.

13        The presentence report, your Honor, recounts a

14   difficult childhood.  I know your Honor has read it, so

15   I'm not going to repeat it, what's in the biographical

16   section.

17        THE COURT:  Doesn't it also -- I'm sorry go

18   ahead.

19        MR. McCALL:  Just he had a difficult parenting

20   situation where he was actually locked in the house at

21   times due to a domestic disturbance between his wife

22   (sic) and his father.

23        THE COURT:  His mother and his father.

24        MR. McCALL:  His mother and his father.  When

25   he came to this country, he was unable to speak or read

73

1    English.

2         THE COURT:  Doesn't the presentence report --

3    and, again, I want to try to make sure I don't confuse

4    any of the defendants -- indicate that he was working in

5    the Dominican Republic?

6         MR. McCALL:  Yes, your Honor.  Yes, he had jobs

7    in the Dominican Republic.  When he came to this

8    country, he was unable to speak or read English, with no

9    formal education, none, not even one grade, your Honor.

10   Simply put, to that extent, he hasn't had the advantages

11   that certainly everyone at these tables have had with

12   parents that gave us the opportunity to go to school and

13   learn.

14        I've been to 7 Daria Court with certain

15   co-counsel here, and he was not living a high life, by

16   any stretch of the imagination.

17        That being said, your Honor, it was his

18   decision to engage in this business, truly, as a family

19   affair, unfortunately.

20        What I'm asking the court to consider is that

21   his role in the offense and the offense conduct -- the

22   seriousness of the offense is reflected in the Guideline

23   range of 135 to 168 months -- I'm asking the court to

24   consider the fact that he has absolutely completely no

25   prior record.  His age, I think he's aged beyond his

1    years, your Honor.  He has very poor health.  He's been

2    seen several times.  He has a circulation problem in his

3    right leg.  That in addition to the fact that he faces

4    certain deportation, he's not going to be a free man in

5    this country even for a single day.  He faces a

6    significant sentence, no matter what, at which time he

7    will be deported.  I'm asking the court to consider that

8    he's a candidate -- because of no record, his poor

9    health, and certain deportation, that he's a candidate

10   for the low end of the Guideline range.

11           THE COURT:  I'm addressing Hector B. Arias.

12           Mr. Arias, you now have an opportunity but not

13   an obligation to speak before I decide what sentence to

14   impose.  That means that you do not have to say anything

15   if you don't want to, but if there's anything you would

16   like to say, this is the time.

17           Perhaps the interpreter --

18           THE INTERPRETER:  I think if the defendant

19   keeps his voice up, I can do it from here.

20           THE DEFENDANT:  I want to apologize to the

21   government of the United States for the mistake that I

22   have made and to the judge as well.  And that's all.

23   God bless you.

24           THE COURT:  Mr. Arias, please stand.

25           In connection with the one count to which you

1    have pled guilty, I hereby sentence you to serve 168

2    months in the custody of the Attorney General of the

3    United States, to be followed by 60 months of supervised

4    release on the standard conditions and on the additional

5    conditions that you use your true name and other

6    identifying information at all times, that you not

7    possess a firearm or other dangerous weapon, that you

8    participate in any substance abuse testing or treatment

9    program proscribed by Probation and, if you're deported

10   or ordered deported, you leave the United States

11   immediately and not return without the authorization of

12   the Attorney General.

13        In addition, you are to pay a $100,000 fine as

14   a condition of your supervised release, and there is

15   also a $100 special assessment.

16        In your plea agreement, you waived some but not

17   all of the rights to appeal that you had or ordinarily

18   have.  As I read it, you have not given up your right to

19   appeal the decisions relating to your sentence if

20   they're otherwise appealable.  But if you wish to pursue

21   an appeal, one must be filed -- a notice of appeal must

22   be filed within ten days of the entry of judgment.  If

23   you would like to appeal but cannot afford a lawyer, one

24   will be appointed to represent you at public expense.

25        As far as I'm concerned, you are the living

embodiment of one of the most dismal failures of many

the systems in the United States that I have ever

directly encountered.  You were in Barney (sic) in the

Dominican Republic.  As far as I can tell from the

presentence report, you were able to work there.  Now,

lots of people want to come to the United States, and

this country is extremely generous in admitting people

legally and giving people an opportunity, but not

everybody who wants to come here can be accepted.  You

came here illegally, you evaded deportation, you used

false identity, you lived in subsidized housing, and you

didn't come here to work hard honestly and send money

back, you came here to deal drugs.  As far as I can

tell, that was your main occupation.  And what you've

done in the process is contribute to really injuring if

not destroying many lives.  And you can look at your son

sitting next to you, who's going to go to prison for

many years because of the directions you gave him.  You

can look at your wife sitting next to you, and she's

going to go to prison for many years.  You can look at

the mother of your grandchild, Ms. Gonzalez, and you can

think about all the generations of your own family that

you've substantially injured if not destroyed.  And then

you can look further down at all these addicted people

who's potential for any kind of happy life is threatened

1    because they can get heroin.

2         That's what you contributed to.  And I think it

3    was Ms. Gonzalez who said something very interesting and

4    important to all of these proceedings, and that is, when

5    your son recruited her when she was pregnant to

6    participate in this, he told her it was riskless.  And I

7    get the impression from this case, there must be a lot

8    of people in or from Barney and the Dominican Republic

9    who think coming to this country and dealing drugs is

10   riskless, and I hope the next time you call or write

11   home, you'll tell them it's not.  Because part of the

12   reason for this sentence is to recognize the seriousness

13   of the offense you committed.  Part of it is to send a

14   message to you that if and when you get out of prison

15   and get deported you don't come back here.  But it's

16   also intended to send a message to other people.  This

17   is not riskless.  This is not the Boston Municipal

18   Court.  You deal heroin in this country, you may end up

19   here, and you'll get a great lawyer appointed for

20   nothing, and you'll get careful attention from the

21   Probation Department and the judge, but, ultimately, the

22   sentencing laws in the United States courts are severe,

23   and they're severe because these crimes are serious.

24         You're the person primarily responsible for

25   everybody else being here, and that's why the Guidelines

78

1    say that 168 months is reasonable for somebody.  And I

2    can't imagine, you know, if it's reasonable for somebody

3    why it wouldn't be reasonable for you.

4         The federal prisons have medical facilities

5    and, if you have medical needs while you're in prison,

6    they'll address them.  But when you get out, you're

7    going to be on supervised release.  The reason I've

8    imposed a hundred thousand dollars fine is I'm not

9    satisfied -- I don't know where all this money went.  I

10   mean, I listened to Ms. Charles, and I'm not satisfied

11   she has no money, although there may be immunity issues

12   in pursuing that with her.  But if the government finds

13   the money, you'll have to pay the fine or, if you have

14   any money, you'll have to pay the fine.  But when you're

15   deported, if you come back to the United States, you'll

16   get caught again, and then you can be brought back in

17   front of me, locked up for about five more years in this

18   case, and then prosecuted for coming back again.

19        So you're going to have many years to think

20   about what you're going to do when you get out of

21   prison, and I hope you'll use that time in part to

22   become determined not to come back to the United States

23   and also in part to tell people back in the Dominican

24   Republic that coming here illegally and dealing drugs is

25   a big mistake.

1         You may be seated.

2         MR. McCALL:  Your Honor, my client asked me to

3    request the court if there could be a recommendation

4    that he serve his sentence at Fort Dix.  He has family

5    in that area.

6         THE COURT:  It's the practice of the Bureau of

7    Prisons to incarcerate a defendant at the facility

8    consistent with his security level that is nearest to

9    his family, and I ordinarily don't make any

10   recommendations.  You should explain all that to the

11   Bureau of Prisons, but I'm not going to make the

12   recommendation in this case.

13        With regard to Hector A. Arias, he too has read

14   the presentence report.  We'll go through the

15   objections.  But as agreed by the parties and the court,

16   as I understand it, the defendant is responsible for one

17   to three kilograms.  There is no adjustment for

18   obstruction of justice.  He does get acceptance of

19   responsibility.  I believe the only disputed issue is

20   role in the offense.  Is that correct?

21        MR. PELGRO:  That's correct, your Honor.

22        MR. MURPHY:  That's correct, your Honor.

23        THE COURT:  We'll go through the other

24   objections eventually -- why don't we go through those

25   now just to make sure I endorse the -- the first

*01-10056*
*USDC, MA*
*Wolf, J.*

# MANDATE

# United States Court of Appeals
## For the First Circuit

No. 02-2296

UNITED STATES,

Appellee,

v.

HECTOR BIENVENIDO-ARIAS,

Defendant, Appellant.

Before

Boudin, <u>Chief Judge</u>,
Lipez and Howard, <u>Circuit Judges</u>.

JUDGMENT
Entered:  May 27, 2004

There was a very clear waiver of any claim of error in regard to the imposition of a four level sentencing enhancement in light of appellant's leadership role in the conspiracy to which he pled guilty. <u>See</u> U.S.S.G. § 3B1.1(a).

The government's motion for summary affirmance is <u>granted</u>. 1st Cir. R. 27(c).

**Certified and Issued as Mandate
under Fed. R. App. R 41.**

**Richard Cushing Donovan, Clerk**

_Jennifer M Viken_
**Deputy Clerk**

**Date:** 6/17/04

By the Court:

Richard Cushing Donovan, Clerk.

By:  **JULIE GREGG**
Appeals Attorney.

[cc: Douglas Beaton, Esq., Michael Pelgro, AUSA, Peter Levitt, AUSA, Dina Chaitowitz, AUSA, Virginia Vander Jagt, AUSA]

